May I please escort Matthew J. Silvera for the petitioner? I'm going to attempt to reserve two minutes for rebuttal. Nine years ago, my client was placed directly on probation in order to a 364-day jail term after he pled no low to a second-degree robbery offense. No sentence was imposed, and under California law, no sentence could be specified given the posture of placing him directly on probation. Now, despite that, Mr. Flores spent six years in ICE custody after the government initiated removal proceedings on the theory that he was an aggravated felon convicted of a theft offense for which the term of imprisonment was at least one year. Now, the case bounced back and forth between the BIA and this court, and on this second petition, Mr. Flores moved for a stay of his removal, which the government opposed. That motion was denied, and Mr. Flores was removed to Guatemala. Nonetheless, when it came time for briefing, the government asked to remand this case back to the BIA. Counsel, if we remand this to the BIA, what is there for the BIA to do? Well, the BIA should sustain the appeal. It should terminate removal proceedings. Does the BIA have any room to maneuver here in light of our cases? I don't believe it does. Do we have a duty of Chevron deference to anything that the BIA says about this statute? No, I don't believe so. Why wouldn't we? Well, first of all, most of what's being interpreted here are California statutes, which that's not in the wheelhouse of the BIA, and it's entitled no deference. As to the immigration statutes, well, we don't have a published BIA decision here, so at most, as you stated in Habibi v. Holder, at most they'd be entitled to Skidmore deference. And I don't think we have any call for deference in this case, given the conflicting position and just the lack of persuasiveness of the reasoning in the BIA's decision. Let's suppose that the BIA thought that we had misinterpreted the statute. I assume it's your position that Alberto Gonzalez and the other cases that follow that are pretty clear as to what the statute, as to what we think the statute means. Absolutely.  That would put us in a position of our prior decisions conflicting with a decision of the BIA. Would we owe any deference to the BIA's decision there? And how would we reconcile that when some of our cases appear to have come up on direct appeal? Right. And therefore there was no Chevron deference that could be given in those circumstances. Well, I mean, we're not just looking at a conflicting interpretation of the BIA in this court. We're looking at a conflicting interpretation of the BIA in every single court to have considered this issue. The Third Circuit, the Second Circuit, the Fifth Circuit, the Eleventh Circuit, and the Ninth Circuit. Nonetheless, I mean, I think we're still looking at, without any sort of published decision, there's no Chevron deference. And once again, even with Chevron deference, we're looking at an unreasonable, I think, an unreasonable application of the statute, particularly when you look at the statutory history and how the statute was amended after Herrera in 1996. It was clear before that time that you had a term of imprisonment meant the sentence that was imposed by the court, regardless of any suspension. All the court really did was detach the duration term, which used to be five years pre-'96, and then it was one year thereafter, from this suspension, regardless of, which was moved into 101A48B. It also dropped the word is. Yeah. Congress is not always completely accurate in what they're doing. This was obviously just an oversight. Well, I mean, there's clearly some kind of an oversight because they failed to put a verb in there where the grammar really demanded one. But what if what Congress intended was to put in the words is authorized? Congress had the opportunity to do that, and I don't want to be in the position of speculating as to what they might have done, particularly given the fact that prior to 1996, it was is imposed. So there is absolutely nothing in the legislative history to suggest that they meant to go back from is imposed. What's your position regarding the bottom line of this court, our decision? What would we say? I think the bottom line for me is to be applying Alberto Gonzalez, to be applying it in this context of this case, where he was clearly placed directly. So we would reverse, I suppose. And we reverse and what? Right. You would reverse and remand to the BIA with instructions to sustain the appeal, to order a termination of removal proceedings. And I think that this court has to direct the government to take all actions necessary to ensure Mr. Flores's safe return. Obviously, after McKenna v. Holder and the kerfuffle that we had in terms of what the government has been doing with those, there are some issues as to exactly what steps are being taken. And I think there does need to be some direction as to what the government needs to do to ensure Mr. Flores can return to the U.S. Is Mr. Flores, is he an LPR? He is an LPR. He came over in 1991 with his mother. But for this conviction, the erroneous decision of the BIA, he would have the right to remain in the United States. That's correct. In fact, at the time that the sentencing was happening, his mother was also seeking an adjustment of status for him to actually gain citizenship. The reason I wanted you to speak to what our bottom line would be is somebody is going to argue in just a minute, following you, and that person would like to know what his burden is. And I think he's probably satisfied himself that maybe you're right on the front and reverse. But what happens after that? He will probably, he may disagree with you. Well, I apologize for interrupting there a second ago. Well, I wanted you to put it down now so he knows what he's going to have to argue against. That's precisely what we're seeking then. We're seeking a sustaining the appeal, terminating removal proceedings, and three, directing the government to ensure that he is entitled to return, lawfully return to the United States. You want to reserve the rest of your time? Absolutely. Okay. Let's hear from the government. Mr. Bernstein? Thank you, Your Honor. I'll just arrange my documents and I'll get started. Thank you. May it please the Court, my name is Jeffrey Bernstein and I represent the Attorney General of the United States. I guess what I'd like to start with after your colloquy with my brother is that Gonzales, and no case cited by the petitioner... You don't have to assume we're going to reverse, but I think you see the argument on that point. Well, yeah. So you start where you want. And that's where I'd like to start.  Gonzales, neither Gonzales, Gonzales, nor any case that preceded Gonzales, Gonzales, the Third Circuit case, nor any case that relied on Gonzales, Gonzales, has anything to do, well, has anything dispositive to do with this case. The issue before the Court has not been presented before. That's why we're seeking remand. But in light of what we've said the statute means, what can the BIA possibly do? Well, this Court in Gonzales, Gonzales, interpreted Section 1101A43G. It mentioned 1101A48B, but it did not deal with 1101A48B's effect on 1101A43G. And that really is the, that's the issue before this Court. Again, Gonzales, Gonzales didn't deal with it. The Third Circuit case didn't deal with it. The Eleventh Circuit cases didn't deal with it. And, of course, you should not pay much mind to the criminal cases dealing with sentence enhancement because of the Supreme Court's decisions. Well, tell me what the government's position is with respect to 40AB. Well, with respect to this case, again, we think that the Board got the result correct, but didn't explain it, explain their statutory interpretation. Okay. Well, I'm waiting for the explanation because I don't see it and I think the cases are running strongly against you, so. Well, I'm happy to explain why I think the Board got it right. Okay. And the reason the Board got it right is because 1101A48B seems to be, seems to run counter to this Court's definition or interpretation of 1101A43G. The Court in Gonzales, Gonzales concluded, rejected the government's determination that you determine the year period by reference to any sentence that the Court could impose under the statute and said that courts and the BIA must look to the actual sentence imposed. 1101A48B provides, defines a term of imprisonment or a sentence with respect to a number of provisions, including 1101A43G. What it says is that the reference to a term of imprisonment or a sentence includes the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition, etc. That seems to be a little confusing because it requires the adjudicator to include a period of incarceration or confinement ordered if there has been, regardless of any suspension. So if there's a suspension of the imposition, then how can the adjudicator include the period ordered by the court of law? And I think that the Board was dealing with this when they cited matter of SS. And I think they determined without saying, and that's why the matter needs to be remanded, but I think they determined that the statute was unclear. And then they adverted in SS to the legislative history. And let me just read what they said about legislative history. Counsel, I'm still having trouble understanding your argument on 48B. 48B refers to a term of imprisonment or a sentence. Now, we don't have a term of imprisonment in this case, do we? Right, which makes... And we don't have a sentence either. Right. So that makes 48B irrelevant to this case. It doesn't because 48B defines a term of imprisonment for purposes of 1101A43G. Right, but we don't have to make sense of it. The court didn't impose a sentence. It imposed a term of probation. And under California law, California law says there is a difference between imposition of a term of imprisonment and a term of probation. First of all, we don't... I don't think Congress intended that the courts pay attention to how the state of California deals with the effect of probation on sentences. So is it the government's contention that his term of probation is a sentence? For purposes of determining what the actual sentence was as interpreted by the court in Gonzales. How could you look at the judgment in this case and tell me what the sentence is? What is the sentence according to the government? Well, according to the Board of Immigration Appeals, the sentence imposed is deemed to be the mandatory minimum of two years because under any set of facts... You haven't had any cases that told us that, though, have you? No, this is the first. And again, we're asking the court to remand this case. Right, but the two years would be referenced to what? That's the statutory penalty in California? That is the mandatory minimum for the crime that he was convicted, this gentleman was convicted of committing. Right, but there's no such sentence in California for this defendant, for this alien. There is a sentence, not under California law, but for, I think what the board was saying was for purposes of immigration law, there is. And again, let me again talk about the legislative history. You do, Mr. Bernstein, and I realize you give it more weight than, say, Justice Scalia, for example, when you talk about the legislative history. But here, I want you to tell us the same thing I asked him to tell us. We reverse and remand, and I think you both will go that far, but he now says, your brother says, we remand with instructions. And you heard what he thought we should do. What do you say we do? We remand to consider, I suppose, is your position. To more articulately, for lack of a better word, explain their construction of the statute. And if I could just go to the legislative history again. And that gets to Judge Barbee's question to you, though. How do they get, what do they have to explain, because what is the sentence in this case? I understand. But again, with all due respect to the court, 1101A48B defines a term of imprisonment or a sentence for purposes of the 1101A43G. And the adjudicator has to make an effort to determine what that means. 1101A43B seems to – Don't you just look at the judgment? Don't you just look to see what the sentence was? No, because of the legislative history. And the legislative history, again, the board explained in matter of SS that the specific purpose in enacting this provision, 1101A48B, was to overturn prior administrative precedent holding that a sentence is not actually imposed when the court has suspended the imposition of the sentence. So Congress understood – Right. When the sentence is suspended. You don't have a suspended sentence here. You have no sentence at all. Legislative history says when the imposition of the sentence was suspended, and that's exactly what happened here. And that's a problem, Your Honor, because what it does in Congress's view, I think in the BIA's view, was to make a conduct which Congress had determined should result in an immigration policy, whether or not – or a problem, whether or not that problem is made to go away simply because of the vagaries of any criminal court's sentencing. I think that's why the board got it right. I think also, as we say in our brief, the matter needs to go back to the board so that it can articulate – Hasn't it been given one chance to articulate – It has been given a chance. And, Your Honor, it should have a second chance because of the Supreme Court's decisions in INS v. Ventura and Brand X, which says that the board, when a matter of statutory interpretation is at hand, must have the first opportunity. Let me explain why the Eleventh Circuit criminal cases and all the criminal cases don't matter. It's also because of the Ventura issue and the Brand X issue. Those courts clearly did not have the benefit of the board's immigration interpretation. They weren't interpreting the statute for purposes of immigration matter. They were interpreting it for a matter of sentence enhancement and the like. So those cases have no bearing on this court's decision simply because they did not have the benefit of the board's guidance, nor do they need it because it was a different issue. Right, but they've now adopted an interpretation of the statute, which means that if the BIA comes out in any other way, that the BIA will be in direct conflict with half the circuits in the country. I do not think so, Your Honor, because, again, it must be understood that these courts who interpreted it in a criminal context were interpreting it – But they are interpreting the same statute. It's true, but I think the cases can be distinguished. Can you think of any other example in which we would allow courts to say, well, the statute means one thing on a direct criminal appeal and means something different if we're talking to the BIA? I can't think of a case like that. I can't think of one. It's true, Your Honor. And there wouldn't be anything in the statute itself that would justify that kind of a divergent jurisprudence. Well, what would militate toward the divergence is – But there isn't anything in the statute that says if you're on direct appeal, then this means this, and if you're coming up through the BIA, then the statute means that. Well, Your Honor, all I can tell you is that the Supreme Court in Brandeis and Ventura has emphasized that if an immigration statute with immigration effect is being considered, validity of the statute is being considered or the interpretation of the statute is being considered, then the BIA gets the first bite of the apple. It certainly doesn't get the first bite of the apple with respect to criminal cases and sentence enhancement, but it gets the – Don't you have a little problem with that argument in this record? Your Honor? Don't you have a little problem with this – with that argument? Did they get the first bite of the apple? They've had one, two. Well – Now you want a third. Isn't that what it is? Again, we're being completely honest with the court. We don't believe that the BIA answered the question in a way which is – I'm not going to say it's not understandable – in an adequate way to enable this court to review it. But usually then we look at the record and we see that the government in those situations, we look at a record and we see that something was done by the government when the BIA failed to do what the government thought it was going to do, and it's done at that level before it comes to us. Isn't it? All I know, Your Honor, is that the Supreme Court has held that you have to give the court, the board, an opportunity to meaningfully interpret the statute. Counsel, if we send it back to the BIA, the BIA comes back, adopts the government's interpretation, it comes back up to us, and it was this panel again, what would we have to do with that? Well – It would now be contrary to our prior precedent, and this panel does not have the authority to overrule our prior precedent. I don't believe it is contrary to your immigration precedent. I mean, I don't know if you all have some criminal cases interpreting the particular provision. I'm not sure that you do, but I can't remember exactly. So there are no cases which would conflict with what we believe the board intended to say, and which we believe to be a correct resolution of the matter. So I don't think, again, as I've argued, Gonzalez-Gonzalez doesn't deal with the issue that the BIA was dealing with. Let me also say that a remand would do another thing. It would allow the board to hear the arguments from my brother, which it has not heard before. So it would allow the board to consider the case with the arguments presented by my brother, which were never presented by the board. The only thing – If the board were to decide something contrary to what we have said in our prior cases, wouldn't that be a position of non-acquiescence by the board? Well, you know, I don't think I'm prepared at this point to get into a discussion about the impact of Brand X and what happens – but a position of non-acquiescence in our circuit where we have made our views clear is not going anywhere, is it? I mean, we would simply have to reverse the board when it came back up. It depends on how you view Brand X, Your Honor, because some would say – and this is not the Attorney General's argument – some would say that Brand X says that where the board has not spoken on a matter, issues a public decision which conflicts with a decision of the Court of Appeals that the board's interpretation has initial primacy, and then the court's – Yeah, that's true under our recent en banc decision, but only in those circumstances where we were owed an obligation of deference to the BIA in the first place. Well, that's true. I mean, obviously, in order for the Brand X argument to hold a lot of water – I'm not saying it wouldn't hold any water otherwise – but, yeah, it would have to be either a precedential decision to which the court owes deference, Chevron deference, or an opinion which relies on a public decision. Otherwise, it's only entitled, as the Court is well aware, to skid more deference. Unless there are further questions, again, we're asking for a remand. We think a remand would be the best result in this case for purposes of the board's case law and the court's case law. And so we respectfully request that the court remand the matter to the board for the reasons that we've expressed. Okay. Thank you, counsel. Thank you, Your Honor. I'd like to start by saying I would have loved the benefit of all of the arguments that the government just made because none of them were in the opposition brief that was filed in opposition to our opening brief. The government simply said it should be remanded so the government can explain. He cited Ventura, Brandeis about six times there. None of those were cited. When he came into court today and was asked if he had any supplemental authorities, none were given. So it's interesting to hear the arguments that I've never heard before. That said, the government still doesn't explain what they think 1101A48B means, what 1101A43G means. So I still don't understand their argument, regardless of the fact that they're now making one. Now, what 1101A48B says is you can look at the period of confinement ordered by a court of law. As I think all of your honors recognize, there was no period of confinement ordered by a court of law except for, at best, this jail term, which was less than a year. Counsel said, don't pay attention, you know, Congress didn't care about, you know, what the state of California was thinking or how sentencing would happen. But, I mean, let's face it, nearly all of the convictions that would be at issue here are going to be under state law. And you have different state sentencing schemes, and so what you have to do is apply the statute to those different state sentencing schemes. When we're looking at something like 1101A48B, where you have suspension of imposition versus suspension of execution, well, we're going to have different ways that states look at those things. In California, it's very clear that when you suspend the imposition of sentence and place someone directly on probation, that they cannot specify a term of imprisonment. They cannot specify a sentence. That's California Penal Code 1170B. So, you know, California law is incredibly relevant here, and it makes the outcome clear. The concept that this issue has not been decided by any court before, I just think that's wrong on several levels. I mean, the issue was presented in terms of what term of imprisonment means in Alberto Gonzales, not Gonzales v. Gonzales. It also was, I think, directly presented in Guzman-Berra, in Asencio-Perdomo, Montregon-Santiago. Were those immigration cases, or were any of those direct criminal appeals? Alberto Gonzales was an immigration case. Guzman-Berra, Asencio-Perdomo, and Montregon-Santiago, all of those were criminal cases. Montregon-Santiago, actually, I don't know if I gave that case enough stress in my brief. That's a Fifth Circuit case in which there you were dealing with a criminal conviction where the statutory minimum sentence would have been two years over the one year that is at issue in this statute. So I think that actually directly relates to what we're looking at here. In terms of the BIAs, you know, having a chance to— Senator Budlin, I hated to stop you. I saw as you moved you wound up and ready to go. But here's the problem that—well, you tell me whether it's a problem or not. If we say our bottom line, we reverse and we remand for consideration of, as I think the government wants. And what would be the basis for us not saying for consideration of instead of what you asked for with directions to? In other words, if we're going to remand with directions to, then can't we do it ourselves? I don't think there's any reason to remand for the BIA to consider this further because the court already told them to do that once. And they didn't even look at all of the authorities that the court told them to look at. We're not, as you said, we're not looking at just a second bite at the apple. We're looking at a third bite at the apple. And as Judge Bybee has made the point, what's going to happen? It's just going to come up and we're—the Ninth Circuit is bound by precedent that already exists. So there's just no point in sending this back for further deliberation by an adjudicative body that has repeatedly missed on this statute. So what would our bottom line be? Bottom line is remand to the BIA with instructions to sustain the appeal, terminate removal proceedings, and there also needs to be in this court's order direction to the government to allow Mr. Flores to return so he can be reunited with his family that he has now been separated from nine years after being sentenced to probation—not sentenced, being ordered to probation and a 364-day jail term. Would we have strayed into a fact-finding situation if we did what you just said? No, not at all. All of the—the record is incredibly simple in this case. And I don't think there are any facts that you'd have to find differently. This is just a pure application of California sentencing law and the INA statutes that this court has already interpreted. Let me take back to a question I think I asked previously. Do we have any direct criminal appeals in which we have held that it is the sentence actually imposed? Oh, yeah, we do. And that's in my 28J letter. That's United States v. Rivera. It cited Alberto Gonzalez for the proposition that it's the sentence actually imposed. So we do have sentencing cases as well. Judge Newman was actually on that panel. And do we have any in which we have specified that the sentence actually imposed does not include any terms of probation? That's been made clear in a couple of other circuits. I'm not sure I've seen it in our cases. No, I do not believe that we've seen that in our cases. Although United States v. Jimenez would come fairly close because in that case you had an individual who was sentenced after probation was revoked. And so in that case I think you're looking with some very similar concepts. The cases that we have decided where we have said that would be all immigration cases. No, both immigration and criminal cases. So Alberto Gonzalez v. INS. No, I'm sorry. I'm referring specifically to the question of whether you count the terms of probation. Yes, those would be criminal cases. Wait, those are criminal cases? Those are criminal cases. Okay, but there's none in our circuit. As I said, no. I don't think there are any in our circuit. I think the best, the closest precedents are Guzman-Berra in the Eleventh Circuit and Asencio-Perdomo in the Fifth Circuit. Okay. All right, thank you, counsel. We thank both counsel for the argument. The case is ordered to be submitted.
judges: Farris, Noonan, Bybee